**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

May 11, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:    *Amber Myers v. Frank Bisignano, Social Security Administration*
       Civil No. 1:25-cv-1767-JMC

Dear Counsel:

Amber Myers ("Plaintiff") petitioned this Court on June 3, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 15, 20, 21). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REMAND the case to the SSA for further consideration for the reasons explained below.

## I.    Procedural Background

Plaintiff filed his Title II application for DIB and Title XVI application for SSI on December 1, 2020, alleging disability as of August 10, 2019. (Tr. 294-304).[1] Plaintiff's claim was denied initially July 28, 2021. *See id.* at 182-191. On August 2, 2021, Plaintiff filed for reconsideration, and on January 27, 2023, Defendant affirmed its original decision. *Id.* at 192-93, 201-06. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on February 27, 2024. *Id.* at 212-13. ALJ Patricia Carey conducted a hearing and subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame on April 30, 2024. *Id.* at 53. The Appeals Council affirmed the decision on April 18, 2025. *Id.* at 1-6.

## II.    The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ (and subsequently the Appeals

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 8) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

Council) followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability August 10, 2019. (Tr. 38). At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments:

> migraines; fibromyalgia; degenerative disc disease of the cervical and lumbar spine with spondylosis; chronic pain syndrome; major depressive disorder; generalized anxiety disorder; gender dysphoria in adolescents and adults; post-traumatic stress disorder; bipolar disorder; attention deficit/hyperactivity disorder; and substance abuse disorder, alcohol (20 CFR 404.1520(c) and 416.920(c)).

*Id.* at 39. At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.*; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). In assessing Plaintiff's fibromyalgia, the ALJ opined in pertinent part:

> The undersigned has also considered SSR 12-2p regarding the evaluation of fibromyalgia. Although there is no listing for fibromyalgia, the undersigned has considered the impairment in regard to Listing 14.09 (inflammatory arthritis) and found that it is not medically equaled. The medical record does not reflect a documented medical need for an ambulatory device, or that the claimant is unable to use one or both upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross movements. For instance, in August of 2021, the claimant used support while ambulating. (13F/29). However, by December of 2021, she ambulated without any aids. (13F/48). In March of 2021, her gait and coordination were normal. (6F/3). In January of 2020, an examination revealed 5/5 strength in all of the claimant's muscle groups in all of her extremities; there was also normal muscle bulk and tone, normal reflexes, intact coordination and sensation, and no unsteadiness of gait. (2F/10). In April of 2021, during an examination, the claimant's upper extremities revealed no abnormality; rather, her

extremities had normal bulk and tone with 5/5 strength bilaterally, her lower extremity strength was 5/5 bilaterally with normal tone and bulk, sensation was intact in the upper and lower extremities, and fine motor skills were normal. (7F/2). Listing 14.09 is also not medically equaled because the medical record does not reflect inflammation or deformity of at least one major joint of an extremity with involvement of two or more organs/body systems, ankylosis of the dorsolumbar or cervical spine, or repeated manifestations of inflammatory arthritis. Although physical examinations, throughout the record, reflected tenderness in multiple areas of the claimant's body, inflammation, deformity, and ankylosis were not detected. (7F/2; 11F/15; 13F/10; 3F/22). Moreover, in October of 2019 and February of 2021, the claimant's range of motion in her neck was normal. (3F/34; 8F/43). During an examination in May of 2021, the claimant's lumbar range of motion was intact. (13F/10).

*Id.* at 40-41. Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she can frequently climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She can frequently balance. She can occasionally stoop (defined as bending at the waist, kneel, crouch (defined as bending at the knees), and crawl. She is to avoid concentrated exposure to unprotected heights or dangerous machinery. She is able to understand and remember simple instructions. She is able to complete 4-5 step tasks at an acceptable pace. She is to have no contact with the general public. She can have occasional contact with supervisors and coworkers and is to not work in settings where there are more than 10 people at any given time in the immediate vicinity of her workstation. She can do simple work that is not complex in nature and is able to do things with multiple steps, such as cooking which is defined as 4-5 steps.

*Id.* at 43. The RFC analysis makes one reference to Plaintiff's fibromyalgia. *Id.* at 51 ("Based upon her migraines, fibromyalgia, degenerative disc disease of the cervical and lumbar spine with spondylosis, chronic pain syndrome, major depressive disorder, generalized anxiety disorder, gender dysphoria in adolescents and adults, post-traumatic stress disorder, and substance abuse disorder, alcohol, it is reasonable to limit the claimant to work at the light level with additional limitations that she can frequently climb ramps and stairs."). Given this RFC determination, the ALJ concluded at step four that Plaintiff was capable of performing past relevant work as a short order cook. *Id.*

Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) an inspector and hand packager (DOT # 559.687-074), with 57,000 jobs listed nationally; (2) an office helper (DOT # 239.567-010), with 43,000 jobs nationally; and (3) small products assembler (DOT # 706.684-022), with 26,000 jobs nationally. *Id.* at 52-53. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security

Act, from August 10, 2019, through the date of the ALJ's decision. *Id.* at 53.

### III.    Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV.    Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff faults the ALJ's and Appeals Council's RFC determination for failing "to comport with the holdings in *Arakas v. Comm'r, Soc. Sec. Admin…*and *Hultz v. Bisignano…*and is unsupported by substantial evidence." (ECF No. 15). For the reasons that follow, the ALJ's and Appeals Council's RFC determination is not supported by substantial evidence. As such, I will remand the case.

   a.   The ALJ and Appeals Council Improperly Considered Plaintiff's Fibromyalgia at Step Three

Plaintiff argues the ALJ's opinion warrants remand because "the ALJ failed to comply with SSR 12-2p by not properly evaluating whether Plaintiff's severe fibromyalgia medically equaled a listing at step three of the sequential evaluation process, thereby repeating the same step-three legal error the Fourth Circuit recently condemned in *Hultz v. Bisignano*. . ." (ECF No. 15 at 9-10). It is true that the ALJ concluded fibromyalgia is a severe impairment; yet, she found at step three that it was not medically equaled. (Tr. 40-41). On this point, Plaintiff avers the ALJ erred because she "rejected equivalence largely because the record lacked objective findings associated with inflammatory arthritis, relying on generally normal examinations and the absence of documented inflammatory or structural abnormalities." (ECF No. 15 at 10). Plaintiff reiterates the step three reasoning as follows:

> The undersigned has also considered SSR 12-2p regarding the evaluation of fibromyalgia. Although there is no listing for fibromyalgia, the undersigned has considered the impairment in regard to Listing 14.09 (inflammatory arthritis) and found that it is not medically equaled. The medical record does not reflect a **documented medical need for an ambulatory device, or that the claimant is unable to use one or both upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross movements**. For instance, in August of 2021, the claimant used support while ambulating. (13F/29). However, by December of 2021, she ambulated without any aids. (13F/48). In

4

> March of 2021, her gait and coordination were normal. (6F/3). In January of 2020, an examination revealed 5/5 strength in all of the claimant's muscle groups in all of her extremities; there was also normal muscle bulk and tone, normal reflexes, intact coordination and sensation, and no unsteadiness of gait. (2F/10). In April of 2021, during an examination, the claimant's upper extremities revealed no abnormality; rather, her extremities had normal bulk and tone with 5/5 strength bilaterally, her lower extremity strength was 5/5 bilaterally with normal tone and bulk, sensation was intact in the upper and lower extremities, and fine motor skills were normal. (7F/2). Listing 14.09 is also not medically equaled because the medical record does not reflect inflammation or deformity of at least one major joint of an extremity with involvement of two or more organs/body systems, ankylosis of the dorsolumbar or cervical spine, or repeated manifestations of inflammatory arthritis. Although physical examinations, throughout the record, reflected tenderness in multiple areas of the claimant's body, inflammation, deformity, and ankylosis were not detected. (7F/2; 11F/15; 13F/10; 3F/22). Moreover, in October of 2019 and February of 2021, the claimant's range of motion in her neck was normal. (3F/34; 8F/43). During an examination in May of 2021, the claimant's lumbar range of motion was intact. (13F/10).

Tr. at 40-41 (emphasis added). The Commissioner asserts Plaintiff "fail[ed] to acknowledge that, although the ALJ found Plaintiff's allegations regarding the severity and limiting effects of her symptoms in general to be inconsistent with the objective evidence, in discussing her fibromyalgia, the ALJ found that the record was consistent with Plaintiff's 'reports of ongoing struggles … including trouble with exertional activities.'" (ECF No. 12 at 5).

To be sure, "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020); *Shelley C. v. Comm'r of Soc. Sec. Admin*, 61 F.4th 341, 361-62 (4th Cir. 2023). *Arakas* and *Shelley C.* do not, however, "suggest than an ALJ should ignore objective evidence and fully credit subjective statements." *Hardin v. Dudek*, No. 7:24-cv-377-KS, 2025 WL 602951 at *5 (E.D.N.C. Feb. 25, 2025). Instead, ALJs must not "require[e] claimants to provide medical evidence that would be impossible to produce given their specific medical conditions." *Clifford v. O'Malley*, No. 1:23-cv-704-LPA, 2024 WL 3105669, at *10 (M.D.N.C. June 24, 2024). Moreover, "a claimant's allegations about [his] pain" "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can be reasonably expected to cause the pain the claimant alleges [he] suffers." *Craig v. Chater*, 75 F.3d 585, 595 (4th Cir. 1996). However, the Fourth Circuit has "previously held that ALJs apply an incorrect legal standard by requiring objective evidence of symptoms even when they also consider other evidence in the record." *Arakas*, 983 F.3d at 97 (citing *Hines v. Barnhart*, 453 F.3d 559, 563, 565-66 (4th Cir. 2006)); *see also Lewis v. Berryhill*, 858 F.3d 858, 866, 868 n.3 (4th Cir. 2017). Claimants may not be faulted for pursuing conservative treatments for fibromyalgia because there is no other available treatment for this chronic condition. *See id.* at 102 ("[Plaintiff] cannot be faulted for 'failing to pursue non-conservative treatment options where none exist.'") (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).

On December 15, 2025, just two days before Plaintiff filed her brief, the Fourth Circuit reversed and remanded *Hultz v. Bisignano*, reiterating that "fibromyalgia is a serious and mysterious condition, disproportionately affecting women, that our current science is incapable of observing through objective medical testing." *Hultz v. Bisignano*, 162 F.4th 111, 115 (4th Cir. 2025). There, at step three the ALJ determined that the plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. *Id.* at 119. "The ALJ determined that the fibromyalgia did not equal this listing because (1) [the plaintiff] did not have a documented need for a mobility device; (2) she did not have involvement of two or more organs and body systems, with one involved to at least a moderate level of severity, (3) she did not have ankylosing spondylitis or other spondyloarthropathies, (4) and she did not have a marked limitation in activities of daily living, social functioning, or completion of tasks in a timely manner." *Id.* The Court ultimately held that the ALJ failed to apply the correct legal standards by relying heavily on objective medical criteria to assess the plaintiff's fibromyalgia in two aspects of the ALJ's decision. *Id.* at 122. Relevant here, at step three the ALJ contravened *Arakas* by relying on "objective medical criteria, such as reliance on mobility devices and the involvement of organs and body systems, to determine whether her fibromyalgia met a listing such as for inflammatory arthritis." *Id.*

Recognizing that the *Hultz* analysis was not yet available for review at the time the ALJ engaged in the analysis here, the analysis nonetheless runs afoul of the governing Fourth Circuit precedent. In finding that Plaintiff's fibromyalgia was not medically equaled, the ALJ here relied on objective medical evidence to discredit the Plaintiff's testimony. By reasoning, "[t]he medical record does not reflect a documented medical need for an ambulatory device, or that the claimant is unable to use one or both upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross movements," the ALJ made the same objective medical criteria error as the ALJ in *Hultz* by penalizing the Plaintiff for her failure to obtain a mobility device. *See Hultz*, 162 F.4th at 122. Where the Commissioner urges that *Hultz* did not involve a challenge to the ALJ's step three finding, the *Hultz* court nevertheless made clear that the ALJ contravened *Arakas* by an improper step three analysis. *See id.* Thus, Commissioner's point to that end is unavailing. The Court also agrees with Plaintiff that the ALJ's repeated references to the objective medical evidence as a means to discredit the Plaintiff's statements about the disabling nature of her conditions has been foreclosed many times. *See id.*; *Arakas*, 983 F.3d at 97. Thus, I remand the case for further proceedings.

## V.    Conclusion

In sum, the Court agrees with Plaintiff that the ALJ and subsequently the Appeals Council improperly considered Plaintiff's fibromyalgia. In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is not supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to improperly discrediting Plaintiff's fibromyalgia in contravention of *Hultz*, and the decision of the SSA is REMANDED for further proceedings in accordance with this Letter Order and Opinion. In so holding, the Court expresses no opinion as to the validity of the ALJ's and Appeals Council's ultimate disability determination. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge